IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01903-EWN-KLM

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff(s),

NANCY CASTANON, and
GEORGENE WAYNE

    Intervenor Plaintiff(s),

v.

MORELAND AUTO GROUP, LLP,

    Defendant(s).
_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

    This matter is before the Court on Plaintiff EEOC's Motion to Enforce Settlement Agreement [Docket No. 76, Filed July 2, 2007] ("Motion to Enforce"). Defendant filed a response to the Motion to Enforce on July 10, 2007 [Docket No. 96], and Plaintiff EEOC filed a reply on July 13, 2007 [Docket No. 99].

    This case involves allegations that Defendant violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* The case was originally referred to Magistrate Judge Michael E. Hegarty, and a hearing on the Motion to Enforce was convened by him on July 11, 2007 [Docket No. 97]. At the hearing, counsel for Plaintiff EEOC requested that a different magistrate judge preside over the Motion to Enforce because of the potential for the parties to call Magistrate Judge Hegarty as a witness.

Magistrate Judge Hegarty agreed, and the case was eventually referred to this Court. An evidentiary hearing was conducted on October 25, 2007, wherein the Court took the Motion to Enforce under advisement [Docket No. 118]. The matter has now been fully briefed and is ripe for determination.

Pursuant to 28 U.S.C. § 636(b)(1) and D.C. Colo. L. Civ. R. 72.1.C, this matter has been referred to the Court for recommendation. For the reasons set forth below, the Court recommends that the Motion to Enforce be **DENIED**.

**I.  Findings of Fact**

Plaintiff EEOC contends that the parties reached an oral agreement to resolve this litigation at a settlement conference held by Magistrate Judge Hegarty on June 8, 2007, and that the terms of settlement were outlined in a document titled Draft Settlement Agreement–Confidential dated June 8, 2007 [Plaintiff's Exhibit 2] ("Draft Agreement").[1] Defendant acknowledges that the parties reached an agreement on several key issues relating to settlement, but contends that the parties failed to agree regarding three material terms of the purported settlement agreement: (1) entry into a Consent Decree; (2) confidentiality of the settlement terms and whether a press release would be issued by the EEOC; and (3) the consideration to be paid to the Plaintiff/Intervenors and class members. Defendant further contends that the absence of an agreement on any one of these terms

---

[1] Plaintiffs EEOC and Intervenors both signed the Draft Agreement on June 8th, but Defendant did not do so. While the lack of a written agreement does not render an oral agreement unenforceable, the Court notes at the outset that Defendant's refusal to sign the Draft Agreement at the conclusion of the settlement conference "is inconsistent with plaintiff's contract theory." *Am. Web Press, Inc. v. Harris Corp.*, 596 F. Supp. 1089, 1092 (D. Colo. 1983).

made entry into a settlement agreement impossible as a matter of law.

At the evidentiary hearing, Plaintiff EEOC called EEOC attorney Nancy A. Weeks and Defense Attorney Timothy Nemechek to testify. Defendant also called Mr. Nemechek to testify and further called Magistrate Judge Hegarty and Defendant's representative Phil Harris as witnesses. Plaintiff EEOC submitted the Draft Agreement and a copy of the EEOC's standard form of consent decree into evidence, among other documents. Defendant introduced into evidence an email from Mr. Nemechek to Ms. Weeks, a recording of a voice mail message from Ms. Weeks to Mr. Nemechek, and a transcript of Ms. Weeks' voice mail message.

Regarding the first allegedly disputed term of the settlement agreement, the evidence presented at the hearing establishes that although the Draft Agreement did not require entry into a consent decree, it did incorporate terms from the template consent decree prepared by the EEOC [Plaintiff's Exhibit 3] which either explicitly or implicitly provided for entry into a consent decree. For example, paragraph 6 of the Draft Agreement [Plaintiff's Exhibit 2] incorporated the following terms of the template consent decree, all of which, when reasonably construed, required entry into a consent decree by the parties: paragraph V.G.19 (referring to Defendant's obligation to maintain records to implement a Consent Decree); paragraph V.G.20 (referring to the EEOC's right to interview Defendant's employees to determine compliance with the terms of a Consent Decree); paragraph V.G.22 (referring to Defendants' obligation to provide semiannual reports after entry of a Consent Decree); and paragraph V.G.23.3 (mistyped as "V.G.23.2") (referring to Defendant's obligation to post a notice pursuant to a Consent Decree). As a

3

result, the Draft Agreement is ambiguous as to whether the parties were to enter into a consent decree. The evidence, however, was undisputed that Defendant did not agree to enter into a consent decree.

Regarding the second allegedly disputed term, the evidence was undisputed that the Draft Agreement did not provide for the issuance of a press release announcing the settlement terms by the EEOC. The evidence was also undisputed that the template consent decree did not provide for the issuance of a press release by the EEOC. The evidence was disputed as to whether Defendant's counsel, Mr. Nemechek, agreed to issuance of a press release by the EEOC. However, the evidence was undisputed that Defendant's representative, Mr. Harris, did not agree to the issuance of a press release. Although Magistrate Judge Hegarty testified that he believed the parties agreed to all of the terms included in the Draft Agreement, that document does not include any reference to the issuance of a press release. In addition, it is undisputed that Mr. Nemechek raised the issue of a press release personally with the EEOC attorney during the settlement conference. Counsel for the EEOC, Ms. Weeks, testified that she told Mr. Nemechek that the EEOC did not enter into confidential settlements. It is also undisputed that the settlement conference continued after this conversation.

Regarding the third allegedly disputed term, the evidence was undisputed that the parties agreed that Defendant would pay Plaintiff a sum certain, and that they would work out the details later as to how much of the settlement funds would be paid to each Plaintiff-Intervenor and class member [Plaintiff's Exhibit 2, ¶ 2]. However, Mr. Harris testified that he would not and did not agree to any settlement that disbursed funds to current

employees of Defendant. At the time of the settlement conference, the identities of the class members were unknown to Defendant. To the extent that the unknown class members included current employees, Mr. Harris testified that he would not agree to settle the case on terms requiring payment to them.

## II. Legal Standards

Settlement agreements are governed by basic contract law principles. *Republic Res. Corp. v. ISI Petroleum W. Caddo*, 836 F.2d 462, 465 (10th Cir. 1987); *see also Sheng v. Starkey Labs., Inc.*, 53 F.3d 192, 194 (8th Cir. 1995). "An enforceable settlement requires the parties to reach agreement on the essential terms of the deal." *Sheng v. Starkey Labs., Inc.*, 117 F.3d 1081, 1083 (8th Cir. 1997). The party requesting enforcement of an alleged settlement agreement bears the burden of proving its existence. *See Shinkle v. Union City Body Co.*, 94 F.R.D. 631, 633 (D. Kan. 1982); *Kenner v. City of Richmond Heights, Mo.*, 356 F. Supp. 2d 1002, 1008 (E.D. Mo. 2005).

## III. Legal Analysis

The parties disagree as to whether the legal issue involved here is governed by federal or state law. The Court determines that federal common law governs whether an enforceable settlement agreement was reached in a Title VII action. *Snider v. Circle K. Corp.*, 923 F.2d 1404, 1407 (10th Cir. 1991) ("Federal common law governs the enforcement and interpretation of such agreements because the 'rights of the litigants and the operative legal policies derive from a federal source'" (quoting *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981)); *see also Stroman v. W. Coast Grocery Co.*, 884 F.2d 458, 461 (9th Cir. 1989); *Taylor v. Gordon Flesch Co.*, 793 F.2d

5

858, 862 (7th Cir. 1986).

Although the Tenth Circuit has, on occasion, applied state law when analyzing whether to enforce a settlement agreement under Title VII, the Court finds those cases distinguishable on two grounds. *Cf. Chavez v. New Mexico*, 397 F.3d 826, 830-31 (10th Cir. 2005); *Heuser v. Kephart*, 215 F.3d 1186, 1190-91 (10th Cir. 2000). First, in both cited cases, the parties agreed that state law applied. Second, in both cases, the court was persuaded that state law did not deviate from federal common law.[2]

Pursuant to federal common law, an oral settlement agreement is binding and enforceable. *See Powell v. Omnicom*, 497 F.3d 124, 129 (2d Cir. 2007); *Taylor*, 793 F.2d at 862; *Fulgence*, 662 F.2d at 1209. As to whether an oral settlement agreement was reached, the parties must mutually assent to all material terms. *See Callie v. Near*, 829 F.2d 888, 890-91 (9th Cir. 1987); Restatement (Second) of Contracts § 17 (1981). Therefore, the key to resolution of this matter is a determination of the "material" terms of the alleged settlement agreement. "Materiality turns on what the parties considered a fundamental part of settlement at the time of formation." *EEOC v. Kidman*, Nos. 04-17005, 04-17489, 2007 WL 1187962, at *2 (9th Cir. 2007) (unpublished decision). Material terms are determined by the information expressed by the parties to each other at the time of the

---

[2] The parties assert that the application of law is significant because of the differences between federal common law, i.e., oral agreements are enforceable, and Colorado state law, i.e., oral agreements are not enforceable. *Compare Fulgence*, 662 F.2d at 1209 (federal common law), *with Nat'l Union Fire Ins. Co. v. Price*, 78 P.3d 1138, 1140-41 (Colo. Ct. App. 2003) (state law). However, the Court finds that no oral agreement was reached by the parties. Under the application of either law, the agreement is not enforceable.

alleged agreement, and cannot be based on the subjective intent of a party which is not communicated to the opposing party. *Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 997 (7th Cir. 2001). Considering the parties' pleadings and the evidence presented at the evidentiary hearing, the Court is persuaded that issuance of a press release and disbursement of payment were material terms and that no enforceable settlement agreement was reached.

As a preliminary matter, the Court notes that the parties never directly negotiated the settlement among themselves. Rather, the alleged agreement was negotiated during a settlement conference facilitated by Magistrate Judge Hegarty, during which the parties were located in separate rooms. At some point late in the settlement conference, Magistrate Judge Hegarty sought to memorialize the parties' negotiations by drafting a term sheet containing the essential terms of their agreement. In addition to the settlement discussions, Magistrate Judge Hegarty used the EEOC's template consent decree as a guide for the terms to include in the Draft Agreement. However, Mr. Nemechek and Mr. Harris testified that when they started to review the Draft Agreement, they noted that it included several terms which had not been adequately negotiated and upon which no agreement had been reached. Magistrate Judge Hegarty could not specifically remember whether Defendant had agreed to each term of the Draft Agreement, although he testified that it was not his practice to include terms in draft agreements unless they had been agreed upon by all parties. The EEOC representative could not – and did not – testify regarding whether each draft term had been negotiated or agreed to by Defendant, because she was not present when Magistrate Judge Hegarty and Defendant were

7

discussing the settlement terms. These specific circumstances inform the Court's judgment regarding whether there was a meeting of the minds between Plaintiff EEOC and Defendant as to each material term such that an oral settlement agreement existed. *See Fulgence*, 662 F.2d at 1209 (noting that settlement in a Title VII action must be knowingly and voluntarily made).

Moreover, despite the fact that Plaintiff claims an oral agreement was reached on June 8, 2007, the evidence presented at the hearing, "including the parties' conduct, surrounding circumstances, later events, and the specific [terms]," is inconsistent with a finding that an agreement was reached. *See Am. Web Press*, 596 F. Supp. at 1092. For instance, as noted earlier, neither the Defendant nor its counsel signed the Draft Agreement when it was presented to them near the end of the settlement conference. *See supra* note 1. In addition, Mr. Nemechek testified regarding a phone message that he received from Ms. Weeks the day after the settlement conference, during which she expressed her disappointment in an email he had sent earlier stating that "the press release is a deal breaker" [Defendant's Exhibit A]. In her message, Ms. Weeks' stated: "[I]f you guys want to make [the press release] the deal breaker, then the deal's gone; at least for us" [Defendant's Exhibit B]. Further, following the settlement conference, Mr. Nemechek filed a motion to stay the case at the behest of Ms. Weeks and informed the court that a "*tentative* settlement" had been reached [Plaintiff's Exhibit 4; Docket No. 60, Filed June 15, 2007] (emphasis added). While Mr. Nemechek indicated that the tentative settlement "resolve[d] all issues in the case," he also noted that it was the "intent of all parties to complete the settlement." Thereafter, on June 18, 2007, the parties participated

8

in a hearing before Magistrate Judge Hegarty during which he again tried to facilitate a settlement because, as he testified, the parties were "so close" and he wanted to try "to get the settlement done." These facts tend to disprove that an enforceable settlement agreement was reached on June 8, 2007.

A.  Press Release

The Court finds that the issuance of the press release was a material term of the settlement agreement. It is undisputed that no agreement was ever reached on the issuance of a press release. As such, the parties' failure to agree to a material term mandates that no enforceable oral agreement was reached. *See, e.g.*, *Inamed Corp. v. Kuzmak*, 275 F. Supp. 2d 1100, 1128-30 (C.D. Cal. 2002) (holding that where material details are undecided, there can be no enforceable agreement).

Plaintiff EEOC's argument regarding the press release is not persuasive. The EEOC alleges that the Draft Agreement contained all settlement terms agreed upon by the parties. The EEOC further asserts that the press release was not a material term, therefore it was unnecessary to include it in the Draft Agreement. Ms. Weeks testified that according to the EEOC's internal policy, the agency would not enter into a settlement agreement without a press release. Indeed, the EEOC introduced into evidence its "Settlement Standards and Procedures," which explicitly provide that "neither the issuance nor the content of the press release should be the subject of negotiations." [Exhibit 1, ¶ 2(e)]. It is clear that settlement negotiations in this case were derailed due to a disagreement over whether the EEOC would issue a press release, and Magistrate Judge Hegarty acknowledged in his testimony that the settlement conference came to a swift end

9

because of the parties' failure to reach an agreement on that issue. The EEOC appears to argue that the press release was not a material term because it was nonnegotiable, as least so far as the EEOC was concerned. However, one party's unwillingness to negotiate a supposed "mandatory" term of settlement does not render that term immaterial. To the contrary, insistence upon a contractual term by a party suggests that the term is, indeed, "material." *See, e.g.*, *Inamed Corp.*, 275 F. Supp. 2d at 1122.

Defendant asserts that the issuance of a press release was a material term, and that it would not agree to enter into a settlement agreement requiring a press release. Likewise, the EEOC acknowledges that without a press release, there would be no deal. Clearly, then, the issuance of a press release was a material term. Moreover, because of unresolved differences between the parties as to whether a press release would be issued, mutual assent on a key term was lacking.

In addition, the EEOC's contention that Defendant's desire for confidentiality was not adequately made known is unpersuasive. While it is true that "mutual assent is to be judged only by overt acts and words rather than by the hidden, subjective or secret intention of the parties," 1 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contract* § 4:1 (4th ed. 1990), the Court finds that Defendant's concern regarding confidentiality was known to the EEOC. First, Magistrate Judge Hegarty testified that he understood that confidentiality was material to Defendant. Further, Mr. Nemechek sought out Ms. Weeks during the settlement conference to discuss the issue of confidentiality. Finally, when the Draft Agreement was presented to the parties, Defendant refused to sign because no agreement had been reached as to confidentiality, and Defendant immediately

conveyed this point of contention to the EEOC.

B.  Disbursement of Settlement Funds

Because the Court finds that there was no agreement as to the material term pertaining to issuance of a press release, it is unnecessary to analyze this issue in great detail. However, the Court is persuaded that the identity of the settlement fund recipients and specification of the disbursement amounts were also material terms to the settlement agreement. It is undisputed that no agreement was ever reached as to who would receive settlement funds and how much each recipient would be paid.

Both parties acknowledged that the names of the individual recipients and the amounts to be disbursed to each were terms to be worked out at a later time. An agreement to agree is not uncommon in settlement negotiations and generally does not render a settlement agreement unenforceable. *See, e.g.*, *Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 911 (5th Cir. 2000). *But see* Restatement (Second) of Contracts § 33 cmt. c ("The more terms the parties leave open, the less likely it is that they have intended to conclude a binding agreement.").

Here, Mr. Harris testified that the identity of the recipients of the settlement funds was material to Defendant. He testified that Defendant would not and did not agree to disburse settlement payments to any current employees who might be class members. It is clear to the Court that the issue regarding who would receive settlement funds was material to Defendants. In such a situation, the parties' stated intention to agree in the future on specific terms makes the settlement agreement incomplete as to a material term and, hence, unenforceable. "[T]he district court only has the power to enforce *complete*

11

settlement agreements." *Callie*, 829 F.2d at 891 (noting that without an agreement as to the method of payment of the settlement, there can be no meeting of the minds as to a material term); *see also* Restatement (Second) of Contracts § 33 cmt. f ("The more important the uncertainty, the stronger the indication is that the parties do not intend to be bound . . . . Even when the parties intend to enter into a contract, uncertainty may be so great as to frustrate their intention.").

    C.    Consent Decree

Both parties' representatives testified that they wanted to enter into a settlement agreement. Because the Court agrees with Defendant that there was no agreement on material terms regarding the press release and the disbursement of settlement funds, it is unnecessary to analyze whether execution of a consent decree was a material term of the settlement agreement. However, the Court notes that the ambiguity created by the Draft Agreement's incorporation of terms from the template consent decree provides further justification for the Court's decision not to enforce the settlement agreement. Although the Draft Agreement makes no reference to execution of a consent decree as a separate term of the parties' alleged agreement, it incorporates provisions of the EEOC's standard form of consent decree that appear to specifically require execution of such a document. Accordingly, the internal inconsistency in the Draft Agreement makes it difficult for the Court to determine the exact terms of the parties' purported agreement. *See City & County of Denver v. Adolph Coors Co.*, 813 F. Supp. 1476, 1479 (D. Colo. 1993) ("The terms of the settlement agreement must be clear, unambiguous, and capable of enforcement.").

**IV.**    **Conclusion**

Because the weight of the evidence establishes that the parties did not agree as to at least two materials terms of settlement, i.e., the issuance of a press release and the disbursement of settlement funds, no enforceable oral settlement was reached. Accordingly, for the reasons stated above, the Court RECOMMENDS that Plaintiff's Motion to Enforce be DENIED.

Pursuant to Fed. R. Civ. P. 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: November 20, 2007

                                          BY THE COURT:
                                          s/ Kristen L. Mix
                                          U.S. Magistrate Judge
                                          Kristen L. Mix